Duel Kirby, et al v. Lois Hedgepeth

5-4838                                    437 S.W. 2d 807

Opinion Delivered March 3, 1969

*Mobley, Bullock & Harris* for appellants.

*Irwin & Streett* for appellee.

J. Fred Jones, Justice.    This appeal grows out of a dispute between relatives as to the location of a property boundary line in relation to a water well.    Mrs. Lois Hedgepeth erected a barbed wire fence along what she considered to be the west boundary line of her property, twenty seven inches west of a bored water well. Duel Kirby removed the wire from the fence posts claiming that the fence was erected on property he and his wife had purchased from Mrs. Hedgepeth. Mrs. Hedgepeth sought an injunction and restraining order against the Kirbys in the Pope County Chancery Court and after hearing the evidence adduced on both

sides, the chancellor and held that the issues had been settled by previous decree and he granted the petition for injunction and restraining order. The Kirbys are the appellants here.

The background for this case, including the previous litigation and decree, is as follows: On July 14, 1961, the appellee Lois Hedgepeth, sold to her brother-in-law and sister, Duel and Stella Kirby, a plot of land in Pope County under a metes and bounds description, as follows:

> "Part of the Southeast Quarter (SE¼) of the Southeast Quarter (SE¼) of Section 16, Township 7 North, Range 20 West, described as beginning at the Southwest corner of said Southeast Quarter of Southeast Quarter, Section 16, Township 7 North, Range 20 West, and run North 136 feet; thence East 98 feet; thence South 136 feet; thence West 98 feet to point of beginning."

The deed also contained a provision as follows:

> "It is specifically agreed that grantor and grantees shall have the right and privilege of the use of the well located on the above described lands."

In 1966, some differences arose between Mrs. Hedgepeth and the Kirbys as to who owned the water well and upon examination of her abstract of title, Mrs. Hedgepeth noticed that the language appearing in her deed to the Kirbys indicated that the well was located on the land she conveyed to them. So on March 11, 1966, Mrs. Hedgepeth filed a petition in the Pope County Chancery Court against the Kirbys alleging that the water well was not on the land conveyed to the Kirbys and that the deed so reciting constituted a cloud on her title. She prayed "that said cloud be removed from plaintiff's title, be declared to be void and of no effect, and title to said property be declared to be vested abso-

lutely in this plaintiff as against the defendants in this cause; for costs and all other proper relief." The Kirbys answered by general denial and affirmatively alleged that the deed was drawn as intended by the parties. After being fully advised of the facts in that case, the chancellor on September 1, 1966, decreed in language as follows:

"4. That the said deed conveying the above described land contains the following language: 'It is specifically agreed that the grantor and the grantees shall have the right and privilege of the use of the well located on the above described land.'

5. That the well referred to above is not located on the land conveyed to the defendant by the plaintiff as described in Book 7-K page 665, but is located on the following described land: Begin at a point 98 feet East of the SW corner of the SE¼ of the SE¼ of Section 16, Township 7 North, Range 20 West, and run East 562 feet; thence North 355 feet; thence West 78 feet; thence South 169 feet; thence West 370 feet; thence South 44 feet; thence West 114 feet; thence South 142 feet; thence to the point of beginning, containing 2.9 acres more or less.

6. That the parties herein and each of them and their tenants, assignees, licensenees [sic] shall have the right to use the above mentioned well.

It is therefore considered, ordered, and decreed that the deed recorded in Book 7-K page 665 from plaintiff to defendant be corrected as follows: 'It is specifically agreed that the grantor and grantees, their tenants, assignees, and licensenees [sic] shall have the right and privilege of the use of the well located on the plaintiff's property described as follows:

Begin at a point 98 feet East of the SW corner of the SE¼ of the SE¼ of Section 16, Township 7 North, Range 20 West, and run East 562 feet; thence North 355 feet; thence West 78 feet; thence South 169 feet; thence West 370 feet; thence South 44 feet; thence West 114 feet; thence South 142 feet; thence to the point of beginning containing 2.9 acres more or less.

The costs of this action are adjudged against the plaintiff."

No appeal was taken from the 1966 decree but soon after it was rendered Mrs. Hedgepeth erected the division line fence, now in litigation, seventeen inches west of the water well.

In the hearing on the petition giving rise to the appeal now before us the evidence was directed to the location of the north-south division line between the property conveyed to the Kirbys by Mrs. Hedgepeth and the property she retained. The evidence offered is in irreconcilable conflict. Mrs. Hedgepeth testified that she sold to Kirbys her land west of the water well; that Kirby measured the south boundary line from the southwest corner with a steel tape and drove a marker down at the southeast corner of the tract, stating "right here's where my land comes to." She testified that this corner was later verified by a survey done by Mr. Ragsdale, who also started from the southwest corner of the forty acre tract which was near the center of a county road on the west boundary of the property. She testified that the southeast corner of the tract was established by Kirby's measurement and the Ragsdale survey, immediately south and slightly west of the water well on her property and it was north from this point that she built her fence following the 1966 court decree. Kirby denied that he measured the south boundary line of the property when he purchased it and denied that he pointed out or assisted in any

manner with the establishment of the southeast corner of the property. He testified that when he purchased the property it was completely enclosed by an old fence with the water well about 15 feet inside the fence on the east side of the enclosure, and that he purchased all the enclosed land subject to survey. He testified that an old hedgerow had grown up just east of the fence along the east boundary line of the property he purchased and that this hedgerow was also east of the well and that it also marked the east boundary line of the property he purchased.

Mrs. Hedgepeth testified that the old fence and hedgerow marked the original boundaries of a yard for a house on the property and had nothing whatever to do with boundary lines. She denied that the property she sold to the Kirbys was ever enclosed by a fence and the testimony of other witnesses tended to support Mrs. Hedgepeth. A survey by Mr. Warndof in April 1968, tended to support Kirby's testimony to the effect that the true east boundary line of his property, as described in his deed, lay along the old hedgerow east of the water well. Mr. Warndof did not locate, or measure from, the southwest corner of the tract as the beginning point described in the deed but began at the nearest section corner and measured 1,222 feet west to the point he considered to be the southeast corner of the Kirby property. Mr. Warndof testified, in part, as follows:

"Q. [A]re the sections, as far as you know, regular in this area?

A. Well, it's all more or less. Generally this one here, I'm pretty sure it is 1320. All of these measurements is based on our way of surveying which is good enough usually. It's not precision surveying known to the coast and geodetic surveying or as you would do downtown where you pay $5,000.00 a front foot, but it's accurate as from local standards."

After hearing the evidence pertaining to the location of the division line between the two tracts, the chancellor found as follows:

"From the evidence and a view of the premises, together with the proceedings in the previous case between the parties, #10,705, it is concluded that all issues between the parties were adjudicated in the previous suit. The previous decree located the well on plaintiff's property with both parties having the privilege of the use of the well. This of necessity fixed the boundary between plaintiff's and defendant's lands to the west of the well and in its present location as indicated by previous surveys and grading on defendant's land."

He then entered the following decree:

"From the pleadings, testimony of witnesses before the Court, statements of counsel, and other things and matters before the Court, the Court finds:

1. That this Court has jurisdiction of the parties and the subject matter of this action.

2. That all issues of law and fact involved in this cause have heretofore been adjudicated in a prior cause bearing No. 10,705 of the Chancery Court of Pope County, Arkansas.

3. That Defendants and each of them, their servants, agents, and employees should be restrained and enjoined from interfering with the Plaintiff's fence in its present location, the said location being on a north-south line commencing 27 inches west of the well as it is presently located.

4. That the Defendant's right to the use of the well should be continued, unaffected by the location of the fence.

5. That the cost of this action should be equally divided by the Plaintiff and the Defendants.

IT IS THEREFORE ORDERED AND DE-
CREED that the Defendants together with their
agents, servants, and employees, and they hereby
are enjoined and restrained from interfering with
the Plaintiff's fence and from interfering with the
Plaintiff's peaceful possession and use of said fence
and the land east of the said fence, the said fence
being located on a north-south line 27 inches west
of the well as the well is now located. The De-
fendants are given the right to the use of said
well free from interference by the Plaintiff. It
is further ordered and decreed that the cost of this
action be divided equally between the parties. The
Court retains jurisdiction of the parties to make
such other further orders as may be necessary."

On appeal to this court the Kirbys rely on the fol-
lowing points for reversal:

"The Chancery Court was in error in ruling that
all issues between the parties were adjudicated in
the 1966 litigation, Pope County Chancery case
No. 10,705, and in ruling that the previous decree
entered therein adjudicated the issue of the bound-
ary line between the parties' lands, since the matter
of the parties' boundary line was not in issue and
the decree was too indefinite to establish a boundary
line.

The preponderance of the evidence clearly
established that the disputed boundary line between
the parties' land was 98 feet east of the SW corner
of the SE¼ of the SE¼ of Section 16, Township
7 North, Range 20 West, and that said boundary
line physically consisted of the mature hedge and
deteriorated remains of a fence which divided the
parties' property."

The chancellor viewed the premises, he heard and
observed the witnesses as they testified and was in a
better position to resolve the conflict in the testimony

than we are from the record before us. Had the chancellor rendered his decree on the basis of the evidence in the record before us, we would be unable to say his decree is against the preponderance of the evidence. The chancellor was familiar with the evidence adduced at the trial in 1966, and his decree in that case placed the well on Mrs. Hedgepeth's property, which was the same thing as placing the division line west of the well. Mrs. Hedgepeth relied on that decree in erecting her fence only seventeen inches west of the well, where it remained undisturbed for two years and until Kirby took it down. We are unable to say that the chancellor erred in holding his 1966 decree *res judicata* as to the location of the east boundary line of appellants' property.

The doctrine of *res judicata* is based upon the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy. *Ted Saum & Co.* v. *Swaffar,* 237 Ark. 971, 377 S.W. 2d 606. In the case of *Robertson* v. *Evans,* 180 Ark. 420, 21 S.W. 2d 610, this court said:

"The test in determining a plea of *res judicata* is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, *but whether such matters were necessarily within the issues and might have been litigated in the former suit.*" (Emphasis supplied.)

And again in *Ted Saum & Co.* v. *Swaffar, supra:*

" . . . [R]es judicata is applicable not only to an issue actually litigated, but also governs as to matters within the issue that might have been litigated."

We conclude that the chancellor did not err in his application of the above rules of law to the facts of this case, and having so concluded, appellants' second point is left without merit.

The decree is affirmed.